# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CAROLYN S. DOTSON,                          )
                                            )
       Plaintiff,                    )
                                            )
      v.                               )     Case No. 4:11-CV-1820 NAB
                                            )
PATRICK R. DONOHOE,                         )
POSTMASTER GENERAL, et al.,[1]               )
                                            )
       Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Patrick R. Donohoe's ("Postmaster General") Motion to Dismiss, or Alternatively, for Summary Judgment.  Plaintiff Carolyn Dotson ("Dotson") did not file a response and the time period to respond has passed.  The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).   For the reasons set forth below, the Court will grant the Postmaster General's motion.

## I.      Procedural History

Dotson filed this action against her employer, the Postmaster General, alleging that she was subject to a hostile work environment, discrimination, harassment, and retaliation based on

---

[1] In this action, Plaintiff has sued the Postmaster General and the United States Postal Service ("USPS").  Title VII provides that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in a civil action against a government agency arising under the Act. 42 U.S.C. § 2000e-16.  *See also Warren v. Dep't. of Army*, 867 F.2d 1156, 1158 (8th Cir. 1989) (failure to name the head of the department bars plaintiff's action unless plaintiff amends complaint to add proper defendant), *see also Soto v. U.S. Postal Service*, 905 F.2d 537, 539 (1st Cir. 1990) ("In cases brought against the Postal Service, the Postmaster General is the only properly named defendant.  A district court should dismiss claims brought against all other defendants, including the U.S. Postal Service and the local postmaster." (internal citations omitted)).  Because the United States Postal Service is not a proper party, pursuant to 42 U.S.C. § 2000e-16 the Court will sua sponte dismiss the United States Postal Service as a defendant from this action.  Plaintiff's suit against the Postmaster General may proceed.

her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

("Title VII").  Specifically, Dotson alleges that she (1) was "discriminatorily" assigned to office

space that was unclean and unsuitable for use in a professional environment; (2) received threats

from management that her papers and records would be confiscated; (3) received a downgraded

2009 performance evaluation; and (4) was retaliated against for previous equal employment

opportunity activity.  Compl. ¶¶ 10-13.  Dotson also alleges that the aforementioned conduct

violated a Settlement Agreement and Release between Dotson and the Postmaster General.

Compl. ¶ 14, Ex. A.

The Postmaster General filed a Motion to Dismiss or Alternatively for Summary

Judgment asserting that Dotson's claims regarding her office space, her 2009 performance

evaluation, and punitive damages should be dismissed for failure to state a claim pursuant to Fed.

R. Civ. P. 12(b)(6).  The Postmaster General is seeking summary judgment on the remainder of

Dotson's claims.

## II.        Motion to Dismiss

Defendants request that the Court dismiss Dotson's claims regarding her office space, her

2009 performance evaluation, and punitive damages for failure to state a claim pursuant to Fed.

R. Civ. P. 12(b)(6).

## A.        Standard

A defendant may file a motion to dismiss for failure to state a claim upon which relief

can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for entitlement to relief [as required in Fed. R. Civ. P 8(a)] require more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  Also, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

"Consideration on a motion under Rule 12(b)(6) is limited to initial pleadings, and if the court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56."  *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799-800 (8th Cir. 2011).  The Eighth Circuit, with some exceptions, "requires strict compliance with the rule that a motion to dismiss must be converted into a motion for summary judgment if a party and the court rely on materials outside the pleadings.  *Id.* at 800.  The Court may consider materials that are part of the public record on a motion to dismiss.  *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

**B.    Discussion**

First, the Postmaster General seeks to dismiss Plaintiff's claims regarding assignment to a new office space, because office relocation does not constitute an adverse employment action under Title VII.  Second, he seeks dismissal of Plaintiff's allegations that she was improperly downgraded in her 2009 performance evaluation, because facts prove that Plaintiff was not

actually downgraded.  The Postmaster General relies on matters outside the pleadings, specifically affidavits of Dotson's supervisors and other postal service employees in support of the motion to dismiss those claims.  Also, the Postmaster General alternatively filed a motion for summary judgment on these claims relying upon the same evidence.  Because the Postmaster General relied on matters outside the pleadings in its motion to dismiss and also filed a motion for summary judgment seeking relief for the reasons outlined in the motion to dismiss, the Court will deny the motions to dismiss regarding the office space and 2009 evaluation and consider those claims as part of the Postmaster General's motion for summary judgment.

The Postmaster General also seeks dismissal of Plaintiff's punitive damages claim. Defendant asserts that Plaintiff cannot obtain punitive damages against a government agency in a Title VII action.  Title VII claimants alleging unlawful intentional discrimination may recover compensatory and punitive damages.  42 U.S.C. § 1981a(1) (action brought by a complaining party under 42 U.S.C. § 2000e-5 or 2000e-16 who engaged in unlawful intentional discrimination may recover compensatory and punitive damages as allowed by the statute). Section 1981a also states that a complaining party may recover "punitive damages against a respondent (other than a government, government agency, or political subdivision) if the complaining party demonstrates the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  Several courts have held in accordance with Section 1981a that the United States Postal Service is a government entity; therefore, punitive damages are not available against it in a Title VII action.  *See Baker v. Runyon*, 114 F.3d 668, 669-672 (7th Cir. 1997); *Bailey v. Potter*, No. 05-0294 CVWHFS, 2007 WL 892499 at *8, n. 9 (W.D. Mo. March 21, 2007); *Prudencio v. Runyon*, 3 F.Supp. 2d 703, 708

(W.D. Va. 1998).  The Court agrees.  The United States Postal Service is a government agency; therefore it is not subject to punitive damages under Title VII.  Plaintiff's request for punitive damages against the Postmaster General will be dismissed for failure to state a claim.

### III.    Summary Judgment

#### A.    Standard

The standard applicable to summary judgment motions is well-settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The initial burden is placed on the moving party.  *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988 ) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence, he or she must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); *Herring v. Can. Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir. 2000).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Herring,* 207 F.3d at 1029 *quoting Anderson,* 477 U.S. at 248.   A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy.   *See Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).   Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1107 (8th Cir. 2000).

**B.    Factual Findings**

Local Rule 4.01(E) provides the following with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations.  Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists.  Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies.  The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts.  All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

In the Memorandum in Support of Summary Judgment, the Postmaster General submitted facts with citations to the record.  In addition, affidavits and exhibits including payroll examination records and copies of the Agreements at issue were attached to the memorandum. Dotson however, has not met the requirements of Local Rule 4.01(E) because she did not

respond to the Postmaster General's Statement of Facts.  Dotson also failed to provide the Court with a statement of material facts as to which she contends a genuine dispute exists.

As a result, for purposes of this motion, Dotson is deemed to have admitted all facts which were not specifically controverted.  *See Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse its discretion in deeming facts set forth in moving party's summary judgment motion admitted under E.D. Mo. Local Rule 4.01(E) where no timely response was filed); *Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E.D. Mo. Local Rule 4.01(E)).  Therefore, the Court makes the following findings of fact[2]:

Dotson is currently a full-time Database Administrator with Database Services of the USPS in Raleigh, North Carolina.  Dotson works, however, in the St. Louis Solutions Center in St. Louis, Missouri.  On July 13, 2000, Dotson initiated contact with a USPS Equal Employment Opportunity ("EEO") Counselor alleging sexual harassment.  On September 21, 2001, Dotson filed a formal EEO Complaint alleging discrimination based on sex, specifically sexual harassment.  On July 21, 2003, Dotson, along with all other relevant parties, entered into a settlement of the case by signing a "Settlement Agreement and Release of All Claims" contract on said date, thereby closing the file.

On August 15, 2003, however, Dotson, without her attorney, filed a motion to Void Settlement Agreement with the Equal Employment Opportunity Commission ("EEOC") Administrative Judge.  On August 19, 2003, Administrative Judge Niehoff issued an Order denying the Motion to Void Settlement Agreement.  In response to Administrative Judge Niehoff's decision, Dotson filed a "Request to Set Aside Settlement Agreement" with the EEOC

---

[2] The facts listed are supported by appropriate citations to the record as required by Local Rule 4.01(E).

Office of Federal Operations ("OFO") on September 9, 2003.  The EEOC OFO issued a Decision on May 18, 2004, denying Dotson's "Request to Set Aside Settlement Agreement."

On August 19, 2004, Dotson filed suit in the United States District Court for the Eastern District of Missouri, seeking to set aside the settlement agreement.  Judge Catherine Perry issued an Order of Dismissal with an accompanying Memorandum, upholding the settlement agreement on January 20, 2005.  Plaintiff appealed Judge Perry's decision to the United States Court of Appeals for the Eighth Circuit and on May 12, 2006, the Court issued a per curiam order, affirming Judge Perry's decision.

Dotson initiated her second EEO complaint (6F-000-0003-10) on February 3, 2010, alleging that Kathleen A. Warnaar ("Warnaar"), her prior manager, retaliated against her regarding her previous EEO activity by allegedly assigning Plaintiff excessive and complex work.   Dotson alleged that Warnaar said, "I am going to keep you so busy; you will not have time to file [another EEO complaint]…" *Id.*  Dotson also alleged that she received an inadequate and unfair performance evaluation in 2009.

Warnaar, manager for Information Technology Performance Accounts in Raleigh, North Carolina, had limited contact with Plaintiff because of the geographic location of her worksite Plaintiff works in St. Louis, MO and Warnaar works in Raleigh, NC.  Warnaar stated that she did not task or assign Plaintiff any work during her assignment as manager of Database Support Services.  Warnaar further stated that she never said, "I am going to keep [Ms. Dotson] so busy; that she would not have time file [an EEO complaint] again."

Warnaar had two specific encounters with Dotson, both prior to 2009, involving plaintiff's work area.  The first time, St. Louis facilities personnel and Neal Holliday informed Warnaar that Dotson's work area was unacceptable.  After several failed attempts by Warnaar

asking Dotson to comply with St. Louis facilities personnel, Warnaar informed Dotson that she would be flying to St. Louis to assist in the cleanup of her work area.  When Warnaar arrived to the postal facility to clean Dotson's work area, Dotson was on sick leave.  Warnaar then placed Dotson's excess paper, used plates, eating utensils, scraps of food wrapping paper, personal mail addressed to Dotson's home address, small articles of apparel, empty and partially empty food containers, as well as outdated manuals into three cardboard boxes.  Warnaar left instructions for Dotson, informing her that she could request help to move the boxes to her car.  Warnaar also left instructions for Dotson with her co-workers, explaining that the boxes could not be stored at the St. Louis facility.

Warnaar's stated that her second encounter with Dotson occurred approximately one year later, involving Dotson's work area.  Warnaar was informed by St. Louis facility personnel that Dotson's work area was approaching an unsafe level again.  Warnaar asked Dotson to clean her work area and after receiving reports of non-compliance from the St. Louis facilities personnel, Warnaar traveled to the St. Louis site to inspect and discuss the situation with Dotson.  After Warnaar inspected Dotson's work area, she explained to Dotson that the postal facility could not be used as a storage alternative and that the materials had to be removed.  Warnaar stated she did not carry out these actions for discriminatory purposes.

Warnaar stated that she did not downgrade Dotson on her 2009 performance evaluation. Dotson reported directly to Gloria Allen ("Allen"), a Business Project Leader, whom reported to Warnaar.  Allen was responsible for the day-to-day assignments and performance evaluations concerning Dotson.

In 2009, Allen was involved in Dotson's 2009 performance evaluation from October 1, 2008 to September 30, 2009.  The rating system for the performance evaluation has four

categories and each category has corresponding numerical values within each category.  The first category of "Non-contributor" has the numerical values of one, two, and three.  The fourth and final category of "Exceptional Contributor" has the numerical values of 13, 14, and 15.  Dotson was assigned the numerical value of "2" for her 2009 performance evaluation which would fall into the category of "Non-contributor."  Due to the economy of the Postal Service, however, the IT average rating of "3" was the number all managers had to work with for the 2009 performance evaluations.  Dotson's numerical value of "2" did not indicate that she was a "Non-contributor"; in fact, the category of "Non-contributor" was modified to be able to show that Dotson was a "Contributor" in her 2009 performance evaluation.  In the "Evaluator End-of-Year Overall Comments" section for Dotson's 2009 Performance Evaluation, Allen wrote, "Carolyn continued to do a professional job with creating, staging, and executing Work Logs, handling the calls and responds timely with the analysis and resolutions, and responding to Alerts.  Carolyn has continued to be an asset to the Deployment Team and a 'go to' for other members of the Team."  Allen stated she did not carry out these actions for discriminatory purposes.

Mediation for the 2010 informal complaint (6F-000-0003-10) was scheduled on April 19, 2010.  (Ex. P, p. 3).  Dotson did not physically show up for mediation, but called in at the scheduled mediation time to make her request for resolution; however, no resolution resulted. *Id.*

On January 19, 2011, Dotson filed a formal EEO complaint (6F-000-0002-11) alleging Neal Holliday and Dan Houston discriminated against her on the bases of her sex and reprisal.  In the 2011 formal EEO complaint (6F-000-0002-11), Dotson alleged she was moved into an unused and unclean room that was used to store old equipment.  Dotson alleged she had to supply her own boxes to move and that local management told her to limit what she unpacked

because carpeting was about to be installed in the postal facility.  Dotson alleged she requested to remove the old equipment from her work area and the rest of the room, but she was told to keep the old equipment.  Doston also alleged that pictures were taken of only her work area and nowhere else in the room that was used to store old equipment.  Plaintiff alleged that Dan Houston said he would board a plane and personally put everything in the trash.

Neal R. Holliday ("Holliday"), manager for the Solutions Center at the Integrated Business Systems Solutions Center ("IBSSC"), St. Louis, Missouri, did not have direct administrative responsibility for Plaintiff.  His primary responsibility with respect to Plaintiff and other Database Service employees was to provide office space.  The original space occupied by the Database Service staff was designed for 10 to 12 people.  In prior years, the Database Service staff required that much space.  Due to attrition within the St. Louis Database Service staff, however, there were only three to four people who occupied that office in 2010.  In order to make better use of the space, Holliday made the decision to move those three to four individuals, which included Dotson, so that he could move another team with 10 employees into the space occupied by the Database Service staff.  These individuals were not moved to a closet; they were moved to office space that was previously occupied by other employees.  Holliday stated he did not carry out these actions for discriminatory purposes.

In 2010, Terry W. Bernaix ("Bernaix"), a Business Project Leader at the IBSSC, in St. Louis, Missouri, was tasked by Holliday to work with contractors who were installing new carpet in the IBSSC facility as well as assign new workspace to the Database Service staff.  Bernaix would also survey each work area and then meet with an employee's supervisor to report unsafe and unclean areas, as part of his job.  One of the employee work areas that Bernaix reported to be unsafe and unclean was Plaintiff's space.  Bernaix took pictures on multiple occasions of

Plaintiff's work area and he stated that taking photographs and using them to report unsafe and unclean work areas is a regular business practice of the Postal Serivce.  Bernaix stated he did not carry out these actions for discriminatory purposes.

Dan P. Houston ("Houston"), whom was promoted to the Manager of Database Support Services in 2010, became responsible for the organization where Plaintiff works.  After Houston saw pictures of Plaintiff's work area in 2010, he contacted her, making it clear it was her immediate priority to clean up her area because it was a safety issue.  If Plaintiff was unable to do so, or if she did not have the proper materials needed to clean her work area, then Houston would come to St. Louis to help.  Houston stated that he did not tell Plaintiff "he would get a dumpster and throw her things out;" however, he did state that he would "come to St. Louis to clean around her area to correct the safety issue…"  Houston stated he did not carry out these actions for discriminatory purposes.

On February 2, 2011, the EEO dismissed Plaintiff's 2011 formal EEO complaint (6F-000-0002-11) for failure to state a claim.  On February 28, 2011, Plaintiff appealed the dismissal of her 2011 formal EEO complaint (6F-000-0002-11) to the EEOC OFO.  On July 19, 2011, the EEOC OFO reviewed Plaintiff's appeal and found that her 2011 formal EEO complaint (6F-000-0002-11) was properly dismissed.  After the EEOC OFO denied Plaintiff's appeal, Plaintiff filed her federal lawsuit on October 19, 2011, alleging discrimination based on her sex (female), and retaliation for her previous EEO activity in the United States District Court for the Eastern District of Missouri.

**C.     Hostile Work Environment Regarding Office Space**

Dotson asserts that the Postmaster created a hostile work environment for her by (1) discriminatorily assigning her office space that was used as a storage area for discarded equipment that was unclean and unsuitable for use and (2) threatened to confiscate and discard her papers and records.

> To establish a claim of hostile work environment, Dotson must show (1)  she belonged to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition, or privilege of employment, and (5) employer liability.

*Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005).  Conduct must be extreme to amount to a change in the terms and conditions of employment.  *Id.*  "The Supreme Court has made it abundantly clear that the standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code."  *Id. citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted).  "Title VII is only violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Al-Zubaidy*, 406 F.3d at 1038 (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The Court determines whether a work environment is hostile or abusive by looking at the totality of circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Al-Zubaidy*, 406 F.3d at 1038.  "The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment."  *Id.*

Dotson's office relocation does not rise to the level of actionable harassment.  The office relocation is not a materially adverse employment action because "it is the kind of annoyance or petty slight that the [Eighth Circuit] has held does not constitute actionable harm."  *Fercello v. County of Ramse*y, 612 F.3d 1069, 1078 (8th Cir. 2010) (*citing Gilbert v. Des Moines Area Community College*, 495 F.3d 906, 918 (8th Cir. 2007)).  It is undisputed that Dotson was moved along with at least three other employees in her department to the space during an office reorganization, which also involved moving employees from other departments.  Dotson has no evidence that this office reorganization was done either wholly or in part to specifically harass her.  Moreover, Dotson "has offered no evidence that the relocation of her office rendered her unable to complete her duties or that it otherwise interfered with her employment."  *Id.*

Next, Dotson's supervisors asking her to clean her office or as described by Dotson in her Complaint- "threatening" to discard her professional and personal records also fails to rise to the level of actionable harassment.  Although Dotson disagreed that she was the source of the uncleanliness in the office, the disputes regarding cleaning her office clearly do not rise to the level of objective and subjective pervasive sexual harassment that affected a term or condition of her employment.  Her supervisors' comments "viewed collectively or individually . . . are merely instances of a subordinate employee being subjected to the criticism and control of a supervisor." *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1048 (8th Cir. 2003).  Therefore, Dotson has failed to make a prima facie case for a hostile work environment claim and the Postmaster General is entitled to summary judgment on this claim.

**D.      Retaliation Claims**

Dotson next alleges that the Postmaster General retaliated against her for filing a previous EEO sexual harassment complaint in 2000 by (1) threatening to confiscate her professional and

personal papers; (2) improperly downgrading her in her 2009 performance evaluation, and (3) moving her into unclean and unsuitable office space.

Title VII prohibits an employer from discriminating against any employee who has opposed any practice made an unlawful employment practice by the statute or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Barker v. Missouri Dep't of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, Dotson must present evidence that (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two." *Barker,* 513 F.3d at 835.

The Court finds that Dotson has failed to make a prima facie case of retaliation. As noted in section C above, Dotson's office relocation is not an adverse employment action. *Fercello*, 612 F.3d at 1078. Next, the Court finds that the reports by Neal Holliday and Terry Bernaix to Dotson's supervisors and Dotson's supervisors' communications to her about the cleanliness of her desk were not adverse employment actions. "An adverse employment action is one that causes a material change in the terms or conditions of employment." *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003). "To be adverse, the action need not always involve termination or even a decrease in benefits or pay. However, not everything that makes an employee unhappy is an actionable adverse action." *Id.* at 717 (internal citations omitted). There is no evidence that the communications among the Postmaster employees and with Dotson caused any material change in the terms or conditions of Dotson's employment. Also, there is no evidence whatsoever to suggest a causal connection between her EEO complaint in 2000 and the disputes about the cleanliness of Dotson's desk. While Dotson was

unhappy that her supervisors came from out of town to clean off her desk, this clearly does not arise to an adverse employment action.

Finally, Dotson asserts that she received a downgraded performance evaluation in retaliation for her prior EEO activity.  The Postmaster General states he is entitled to summary judgment as Dotson has failed to exhaust her administrative remedies regarding this claim.  "In order for a federal employee to sue for sex discrimination under Title VII, the employee must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory."  *Jenkins v. Mabus*, 646 F.3d 1023, 1026 (8th Cir. 2011) (internal citations omitted) (citing 29 C.F.R. § 1614.105(a)(1)).  Employees must consult an EEO counselor prior to filing a complaint with the purpose of informally resolving the matter.   29 C.F.R. § 1614.105(a).  If an employee chooses to participate in an alternative dispute resolution procedure, the EEO pre-complaint counseling period is extended to 90 days.   29 C.F.R. § 1614.105(f).  If the claim is not resolved before the 90th day, the employee is given notice regarding the right to file a discrimination complaint.  29 C.F.R. § 1614.105(d)-(f).  A complaint must be filed within 15 days after the receipt of the notice.  29 C.F.R. § 1614.106(a)-(b).  The employee is "required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation."  *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999).

Dotson filed an informal complaint with the EEO on February 3, 2010 regarding an "inadequate and unfair" 2009 performance review.  Dotson participated in a mediation, but the case was not resolved.  According to the summary judgment record, the EEO office provided Dotson with a Notice of Right to File a discrimination complaint.  Dotson did not file a complaint regarding her 2009 performance review.  Therefore, Dotson did not exhaust her

administrative remedies and the Postmaster General is entitled to summary judgment regarding Dotson's retaliation claim about her 2009 performance review.  Based on the foregoing, the Postmaster General is entitled to summary judgment regarding all of Dotson's retaliation claims.

### E.    Breach of Contract

The Postmaster General also seeks summary judgment on Dotson's claim that the USPS breached a prior settlement agreement with her, because Dotson failed to exhaust her administrative remedies.  "A plaintiff alleging that the government failed to comply with the terms of a Title VII Negotiated Settlement Agreement can request that the terms of the settlement agreement be specifically implemented or alternatively, that the complaint be reinstated."  *Harris v. Brownlee*, 477 F.3d 1043, 1047 (8th Cir. 2007).  If a complainant "believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance."  29 C.F.R. § 1614.504(a).

The record does not reflect that Dotson ever contacted the EEO Director about a breach of her settlement agreement with USPS.  Therefore, Dotson has failed to exhaust her administrative remedies and the Defendant is entitled to summary judgment on this claim.

### F.    Claims Previously Raised and Settled

Finally, the Postmaster General seeks summary judgment regarding allegations in paragraphs 1, 13, and 16 of Dotson's Complaint asserting that Dotson is attempting to re-litigate claims raised or addressed in a previous court action.  Upon review of the aforementioned paragraphs, the Court finds that the allegations contained in them are referenced to support Dotson's retaliation claim for prior EEO activity.  As Dotson's retaliation claims have been fully

addressed by the Court, the Court finds that Dotson does not have any other claims before the Court.

## IV.    Conclusion

Based on the foregoing, the Court grants in part and denies in part Defendant's Motion to Dismiss; grants Defendant's motion for summary judgment in its entirety; denies Defendant's Second Motion to Dismiss as moot; and dismisses all claims against the United States Postal Service.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's First Motion to Dismiss is **GRANTED in part and DENIED in part**.  The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's punitive damages claim.  The Court **DENIES** the remainder of Defendant's first Motion to Dismiss.  [Doc. 13]

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.  [Doc. 13]

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Dismiss pursuant to Rule 41(b) is **DENIED as moot**.  [Doc. 18]

**IT IS FURTHER ORDERED** that the claims against the United States Postal Service are **DISMISSED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 16th day of January, 2013.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

18